IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-40006-02-HLT |
| | ) | |
| AARON POUNCIL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Aaron Pouncil's motion to suppress evidence found in a vehicle in which he had been traveling (Doc. # 48). On September 25, 2018, the Court received evidence, including a video recording, and heard argument concerning the motion. For the reasons set forth below, the Court **denies** the motion for suppression of the evidence.

On February 7, 2017, Mr. Pouncil was a passenger in a car traveling eastbound on I-70 through Wabaunsee County, Kansas; the driver was co-defendant William Johnson. After following defendants' car for a few minutes, Kansas Highway Patrol troopers pulled defendants over and executed a traffic stop. Eventually, the troopers called for a canine, executed a search of the car, and found PCP, a controlled substance, in a cooler in the back seat. By this motion, Mr. Pouncil argues that the stop, either initially or eventually, violated

the Fourth Amendment, and he further argues that the evidence found in the vehicle should be suppressed as a fruit of that illegal stop.

The Court first addresses whether the initial stop of the vehicle was valid. The Tenth Circuit recently reiterated the governing standard:

> A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. To justify a traffic stop, an officer needs only reasonable suspicion---that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law. The government bears the burden of proving the reasonableness of the officer's suspicion.

*See United States v. Vance*, 893 F.3d 763, 773 (10th Cir. 2018) (internal quotations and citations and footnote omitted). In this case, the Government asserts that the stop of defendants' car was valid because of the troopers' reasonable suspicion that Mr. Johnson had violated Kansas traffic laws in failing to maintain his lane and in executing an unsafe pass of a truck.

The Court first concludes that the troopers did not have an objective basis for suspecting that Mr. Johnson violated Kansas law in failing to maintain his lane. The Government relies on K.S.A. § 8-1522(a), which the troopers cited in issuing a warning to Mr. Johnson. That statute provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane." *See id.* Both troopers testified that they observed defendants' vehicle, while traveling in the right-hand lane, cross the right line one time. The video from the troopers' dashboard camera, which was admitted into evidence, confirms that defendants crossed the lane line only a single time, for approximately one second. The Kansas Supreme Court has held, however, that a violation of this statute "requires more

than an incidental and minimal lane breach." *See State v. Marx*, 289 Kan. 657, 674 (2009). In *Marx*, the court held that observation of a single instance in which the subject vehicle failed to maintain its lane did not allow for a reasonable suspicion of a violation. *See id.* at 675-76. Similarly here, the troopers observed only a minimal lane breach, which is insufficient to establish a violation of Section 8-1522(a) as interpreted by the Kansas Supreme Court.[1]

The Court does conclude, however, that the troopers' observation of an unsafe pass by Mr. Johnson provided a valid basis for the traffic stop of defendants. Kansas law requires that a pass of another vehicle be made safely. *See* K.S.A. § 8-1516(a) (driver passing another vehicle in the left lane "shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle"); *id.* § 8-1522(a) (vehicle "shall not be moved from [its] lane until the driver has first ascertained that such movement can be made with safety"). Each trooper testified independently that he observed defendants' vehicle return to the right lane after the pass at a very close distance to the overtaken truck, well short of the two seconds or seven car lengths (based on a speed of 70 miles per hour) that troopers generally require. *See United States v. White*, 584 F.3d 935, 946 (10th Cir. 2009) (affirming finding of a valid stop based on an unsafe pass where the officer applied the two-second and car-length-per-ten-miles-per-hour standards). This testimony is corroborated by the video, which appears to show defendants' vehicle returning to the right

---

[1] The troopers also testified that defendants' vehicle was drifting within the right lane, but such conduct by itself does not violate Kansas law. Moreover, the video refutes any claim that Mr. Johnson was driving erratically.

3

lane in front of the truck with very little clearance.² Accordingly, the Court finds that the troopers observed facts that objectively provided a reasonable suspicion of a traffic violation.

In arguing that the stop was invalid, Mr. Pouncil relies heavily on the fact that the troopers did not mention the unsafe pass during the stop, but instead told defendants only that they were being stopped for a failure to maintain a single lane. Moreover, the reporting trooper did not cite the passing violation in two initial reports, although he did mention that violation in his official incident report, which he wrote shortly after the incident. Under the applicable objective standard, however, the subjective motivations of the officer making the stop are irrelevant. *See United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). Thus, the troopers need not actually have relied on the violation in stopping defendants. Moreover, the troopers credibly testified that they *did* rely on this violation in deciding to stop defendants.³ Mr. Pouncil has not provided any authority suggesting that a stop is invalid if the officer does not tell the defendant about an observed violation that would otherwise support the stop.

Mr. Pouncil also argues that the fact that the troopers mentioned only the failure to maintain a single lane to defendants provides evidence that they did not actually observe

---

² Indeed, it appears from the video that the truck braked when defendants' car cut in front of it (as shown by the truck's brake lights). One trooper testified that he did not notice the truck's brake lights, but the video evidence that the truck braked corroborates both troopers' testimony that defendants' vehicle moved in front of the truck at a very close distance.

³ The troopers' testimony that they did not immediately pull defendants over after the pass because they were waiting for a safer place to effect the stop was similarly credible.

4

any unsafe pass. The Court rejects this argument. The troopers' testimony that they did observe the unsafe pass was unequivocal and credible, and the Court finds that they did observe that violation. The Court therefore concludes that the initial stop of defendants, based on a reasonable suspicion that Mr. Johnson had made an unsafe pass in violation of Kansas law, did not violate the Fourth Amendment.[4]

Mr. Pouncil also argues that, even if the initial stop was valid, the stop became invalid when the troopers refused to let defendants leave after they returned Mr. Johnson's documents and issued a warning for a traffic violation. Whether the continuation of the stop was valid appears to present a close question, but the Court need not answer it; even assuming the stop became invalid, Mr. Pouncil has failed to meet his burden to establish the requisite factual nexus between his detention and the discovery of the contents of the vehicle, as required by the Tenth Circuit in *United States v. Nava-Ramirez*, 210 F.3d 1128 (10th Cir. 2000), and *United States v. DeLuca*, 269 F.3d 1128 (10th Cir. 2001).

In *Nava-Ramirez*, the defendant, who had been driving a vehicle that he did not own, argued that even if the initial stop of him (because of a cracked windshield) was valid, his continued detention became unlawful before the discovery of drugs in the vehicle's trunk, and that the drug evidence should have been suppressed as a result of that unlawful detention. *See Nava-Ramirez*, 210 F.3d at 1130-31. The Tenth Circuit noted that a defendant without the requisite possessory or ownership interest in the vehicle "may

---

[4] In light of this conclusion, the Court need not address the Government's argument that the initial stop was also justified by the troopers' concern that the driver of defendants' vehicle may have been sleepy or intoxicated.

nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as a fruit of the illegal detention." *See id.* at 1131. That defendant must establish, however, that his detention violated the Fourth Amendment and that there is "a factual nexus between the illegality and the challenged evidence." *See id.* (internal quotation and citation omitted). In establishing the requisite factual nexus, "[a]t a minimum, a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." *See id.* (citation and footnote omitted). The court held that the defendant had failed to satisfy that evidentiary burden, as follows:

> At the suppression hearing, Nava-Ramirez put on no evidence to demonstrate that had he, at some point after the passenger compartment search was completed but before the trunk search began [when the detention allegedly became illegal], requested permission or otherwise attempted to depart the scene, he would have been able to leave in Wald's car. In the absence of some supportive proof, this court cannot simply speculate that Wald would have given Nava-Ramirez permission to take his car. Because Nava-Ramirez has failed to meet his burden of proving a factual nexus between his detention and the evidence found in the trunk, this court cannot suppress that evidence as the fruit of the purportedly unlawful detention.

*See id.* at 1131-32.

In *DeLuca*, the defendant seeking suppression was the passenger in the vehicle in which drugs were found. *See DeLuca*, 269 F.3d at 1130-31. The Government conceded in that case that although the initial traffic stop (at a checkpoint) was legal, the stop later became illegal. *See id.* at 1131. The Tenth Circuit reiterated that, although a passenger has standing to assert a Fourth Amendment violation from a traffic stop, he must demonstrate a causal link---a factual nexus---between *his* illegal detention and the

6

discovered evidence that he seeks to suppress. *See id.* at 1132, 1134. The court concluded that its case fell squarely within the holding of *Nava-Ramirez*, and it reversed the district court's suppression order, as follows:

> Just as in *Nava-Ramirez*, Mr. DeLuca has failed to show that had he requested to leave the scene of the traffic stop, he would have been able to do so in [the owner's] car. Therefore, without any evidence to the contrary, we must assume that regardless of Mr. DeLuca's presence, the car and its owner would have continued to be detained and the officer would still have found the methamphetamine.

*See id.* at 1132, 1133.

Resolution of the present motion is governed by *Nava-Ramirez* and *DeLuca*. Like the defendants in those cases, Mr. Pouncil has not claimed any possessory or ownership interest in the vehicle (or in the cooler in which the drugs were found). Therefore, under the holdings of those cases, Mr. Pouncil was required to produce evidence at the hearing that, had he not been illegally detained, he could have left with the vehicle. Mr. Pouncil did not produce any such evidence (he did not testify at the hearing); thus, he failed to submit evidence linking the discovery of the drugs to *his* detention. He therefore failed to satisfy his burden to demonstrate the required factual nexus.

Mr. Pouncil appears to argue that *Nava-Ramirez* and *DeLuca* were wrongly decided, but that argument must await consideration by another audience, as this Court is bound to follow Tenth Circuit precedent as established in those cases. Mr. Pouncil also argues that the Tenth Circuit's holding in those cases should be limited to the situation before it, in which the initial stop was valid. *See United States v. Mosley*, 454 F.3d 249, 254-56 (3d Cir. 2006) (distinguishing *DeLuca* as applying only in the case of a valid initial stop);

*United States v. Ibarra*, 853 F. Supp. 2d 1103, 1106-07 (D. Kan. 2012) (agreeing with rationale of *Mosley* in distinguishing *DeLuca* on that basis). The Court need not decide that issue of the scope of the holdings in *Nava-Ramirez* and *DeLuca*, however, because the limitation urged by Mr. Pouncil would not help him in this case in which the Court has found that the initial stop was valid.

Accordingly, Mr. Pouncil is not entitled to suppression of this evidence, whether or not the continuation of the stop was illegal in this case. The Court therefore denies the motion to suppress.[5]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to suppress certain evidence (Doc. # 48) is hereby **denied**.

IT IS SO ORDERED.

Dated this 2nd day of October, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[5] Mr. Pouncil also argues in his motion that, if the evidence were suppressed, the charges against him would be subject to dismissal for lack of venue. The Court's denial of the motion to suppress renders this argument moot.

8